Louie J. Yanza
**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487



**FILED**
DISTRICT COURT OF GUAM
SEP 3 0 2005
MARY L.M. MORAN
CLERK OF COURT

Attorneys for Defendant THOMAS V.C. TANAKA

## U.S. DISTRICT COURT

## DISTRICT OF GUAM

UNITED STATES OF AMERICA,

            Plaintiff,

    vs.

THOMAS V.C. TANAKA,

           Defendant.
_____/

CRIMINAL CASE NO. 03-00032

**SENTENCING MEMORANDUM**

## I.    **STATEMENT OF THE CASE**

On April 2, 2003, the U.S. Attorney's Office for the U.S District Court, District of Guam, filed an Information against Thomas V.C. Tanaka aka Tommy Tanaka for Misprision, a felony, in violation of 18 USC §4. The Defendant immediately pled guilty to the offense. The guilty plea was accepted and the Defendant was released on his personal recognizance.

The facts of the case stem from the Department of Public Works' ("DPW") procurement of bus shelters after Typhoon Paka struck Guam. DPW awarded to Guam Concrete Builders the bus shelter contract in December of 1997 for a total amount of $1,915,200.00. The Defendant is the President and Chief Executive Officer

of Guam Concrete Builders, whose primary business purpose is to engage in fabrication of pre-cast concrete panels, which have been used in the construction of low-cost housing and were used for the construction and erection of bus shelters.

In early 1998, DPW informed the Defendant that the Federal Emergency Management Agency ("FEMA") raised questions about the contracts award and that two other bids were needed. At that time, DPW director, Anthony Quinata advised the Defendant that Guam Concrete Builders will not lose the contract but, FEMA required competitive bidding under the emergency procurement laws of Guam.

To secure FEMA's contract award Mr. Gil Shinohara, the Governor of Guam's Chief of Staff, submitted a bid to DPW, which indicated a date of December 22, 1997, when in fact, the bid was made in January 1998. The Defendant knew that the other bids that were provided to DPW were in fact false.

When the Defendant was interviewed by the FBI, the Defendant stated that the first bus shelter was produced on a date that was not in fact the correct date. The Defendant chose this date because it was after the formal contract was entered and would provide sufficient time for fabrication, following the contract signing.

After the Defendant pled guilty to the information, the Defendant then provided testimony in the related case of _United States of America v. Gil A. Shinohara_, U.S. District Court of Guam Case No. 03-00047-001. The Defendant testified against Mr. Shinohara. Mr. Shinohara's charges arose from the false bids made in the procurement of the bus shelters.

//

## II. THE DEFENDANT SHOULD BE GRANTED A VARIANCE FROM THE RECOMMENDED GUIDELINES IN USSG § 3B1.2 BASED ON DEFENDANT TANAKA'S MINIMAL PARTICIPATION.

Prior to January 2005, the U.S. District Court of Guam had the discretion to "depart" downward from a guideline of the United States Sentencing Guidelines if a case was atypical and differed from the norm. *United States v. Kirk*, 938 F.2d 149 (9th Cir. 1991). The a stringent mandatory guidelines outlined various basis for departures based on various characteristics of both the case itself and the defendant being sentenced. Of those departures is a departure based on mitigating role, which allows for departure from the mandatory guideline range based on mitigating role. The exception provides for a sentence below the applicable range if the defendant "was a minimal participant in any criminal activity." USSG §3B1.2. If a sentencing court finds a justification for downward departure from the stringent guidelines based on this exception, the sentence imposed is then tailored to account for the mitigating role.

In *United States v. Booker-Fanfan*, decided January 12, 2005, the United States Sentencing Guidelines were deemed "advisory" by the United States Supreme Court. 125 S.Ct. 738. The guidelines were stripped of their mandatory nature and judges were required to merely consult the guidelines when delineating a sentence. Judges are no longer bound by the strict confines of the guidelines and were granted authority to take factors that were not adequately accounted for in the guidelines into consideration. Under the old sentencing regime, variances from the mandates of the guidelines were called "departures" because they departed from the fixed range under the sentencing table. Included in the advisory status of the guidelines are the exceptions that provide for departure from an unwise applicable range. As such, the

mitigating role departure/variance is also merely advisory – that is to say, that requirements that were necessary to qualify for the departure are mere suggestions, leaving judges the opportunity to stray from the strict qualifications required by the provision.

In the case at hand, Defendant TANAKA meets the requirements necessary for departure/variance based on his mitigating role, under the old sentencing regime. Furthermore, due to the advisory nature of the guidelines, Defendant TANAKA would qualify for an alternative sentence under the newly advisory guidelines, under which this Court may take into account the extent and role of Defendant TANAKA's participation in the commission of the current offense, along with the other factors that support the imposition of a reasonable sentence. Thus, this Court should impose its sentence based on Defendant TANAKA's mitigating role and other compelling factors attributable to Defendant TANAKA that call for a reasonable sentence rather than a sentence suggested by the guidelines.

## A. UNDER SECTION 3B1.2(a), THE DEFENDANT QUALIFIES FOR A DEPARTURE/VARIANCES FOR HIS MINIMAL PARTICIPATION IN MISPRISION.

"Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." Commentary Section 4.

Here, the Defendant had no knowledge of the extent of Mr. Shinohara's attempt to procure false bids so that FEMA would not raise questions regarding the bus shelter award. Because Mr. Shinohara was the primary actor and the Defendant's role was minimal, if not zero, the Defendant qualifies under §3B1.2(a).

In the case at hand, the Defendant's criminal history does not reflect that of a person from whom the public should not trust or the public should be protected from. The Defendant has no violent prior in his criminal history. And has had in fact no run-ins with the law.

### III.  THE DEFENDANT SHOULD RECEIVE A REASONABLE SENTENCE BASED ON THE CONSIDERATION OF HIS UNIQUE CHARACTERISTICS BASED ON UNITED STATES V. BOOKER AND 18 U.S.C. §3553(a).

In <u>Booker/Fan Fan</u>, the Supreme Court held that the sentencing guidelines must be considered merely as "advisory" and only one of the sentencing factors to be used in conjunction with those listed for consideration during sentencing in 18 U.S.C. §3553(a). 125 S.Ct. 738, 750 (2005). Under the Sentencing Reform Act, specifically 18 U.S.C. §3553(b )(1), the guidelines were a mandatory nature, requiring courts to impose sentences based on the offense level, criminal history category, and guideline range as provided for in the guideline sentencing table. Yet, in <u>Booker</u>, the Court held that 18 U.S.C. §3553(b)(1) and 18 U.S.C. §3742(e), which made and were dependent on the guidelines' mandatory nature "must be severed and excised." <u>Id</u>., at 756.

Although the congressional intent in enacting the above-mentioned statutes were to "provide certainly and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities," Congress also sought to maintain "sufficient flexibility to permit individualized sentences when warranted." <u>Id</u>., at 767, citing 28 U.S.C. §991(b)(1)(B). As noted in the guidelines themselves, the purpose of the guidelines were to promote "honesty," "uniformity," and "proportionality" that would appropriately impose "different sentences for criminal conduct of different severity." USSG §1A1.1, App. Nt. 3. Yet, it is also noted that "[perfect] uniformity . . . destroys

proportionality." *Id*. Explicit in this note is the notion that sentences require proportionality based on factors not considered by the sentencing commission, which may undercut the goal of uniformity of the guidelines. Thus, the guidelines are now merely "advisory" and while judges must "consult [the] guidelines" during sentencing, they are not bound to apply them. *Booker*, at 767.

Implicit in the goal of proportionality in sentencing is a requirement that the sentence be reasonable. To achieve this, the Legislature has stated that the sentencing judges shall consult Section 3553(a), which sets forth factors to take into account in delineating a sentence. These factors include: the need for the sentence to reflect the seriousness of the offense and to provide just punishment for such, the need to protect the public from further offenses of the defendant, the need to provide the defendant with correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(1)-(3). Furthermore, judges must also consider the nature of the offense along with the character and history of the defendant. In the case at hand, as previously discussed, an inquiry into the characteristics and history of the Defendant reflects that of a elderly business gentleman who had no run-ins with the law. The Defendant's role in having DPW procure false bids for Mr. Shinohara was minimal, if not nil. These facts are compelling in themselves as they go toward the culpability of the Defendant and his ability to realize the repercussions of his actions. The sentence imposed should reflect the Defendant in the most effective manner and a period of imprisonment would serve neither the needs of the Defendant nor the governmental interest.

Furthermore, although the charge itself should not be taken lightly, the facts and circumstances surrounding the evidence leading to the Defendant's charge do not substantiate a claim of potential dangerousness to the public or himself. The Defendant was cited for not advising federal authorities of the false bids. Thus, the actual seriousness of the underlying offense does not call for harsh punishment as with the case of offense where a crime of violence against an identifiable victim. As the crime did not involve a societal threat or risk of threat, there is no indication that there is a substantial need to protect the public from future crimes of the Defendant.

Thus, based on the above-mentioned factors and the wide latitude granted to sentencing judges in considering various factors and characteristics of a defendant in the imposition of an appropriate and reasonable sentence, the Defendant respectfully requests that this Court impose a reasonable sentence outside of the advisory guideline range.

## IV.    SENTENCING RECOMMENDATION

Based on his mitigating role, Defendant TANAKA should be granted a variance, what is referred to as a departure in the old guideline context, from the suggested guideline range. It is anticipated Probation will establish Defendant TANAKA's total base offense level at eleven (11), with a range between 8 to 14 months, with one-year of supervised release to follow. However, this recommendation fails to reflect Defendant TANAKA's mitigating role and the role he played in the commission of the current offense. In taking to account Defendant TANAKA's role, a 4-Level variance should be granted by this Court, fixing his total offense level at seven (7). Defendant TANAKA has a criminal history category of 1.

Defendant TANAKA was cooperative when contacted by federal law enforcement, has accepted responsibility, provided substantial cooperation to the United States, and has expressed his sincere desire to reform and place all this history behind him to move on. Thus, Defendant TANAKA respectfully requests that the proposed 0-6 months period of incarceration be zero.

## CONCLUSION

Based on the above, Defendant TANAKA respectfully requests that this Court grant the 4-Level downward variance from the recommended sentencing guideline range due to his minimal role and the substantial cooperation he has provided to the United States.

Respectfully submitted this 29th day of September, 2005.

**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
Attorneys for Defendant
**THOMAS V.C. TANAKA**



By: _____
LOUIE J. YANZA