Louie J. Yanza
**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
115 Hesler Place, Ground Floor
Governor Joseph Flores Building
Hagåtña, Guam 96910
Telephone No.: (671) 477-7059
Facsimile No.: (671) 472-5487

Attorneys for Defendant THOMAS V.C. TANAKA

**FILED**
DISTRICT COURT OF GUAM
OCT 11 2005
MARY L.M. MORAN
CLERK OF COURT

**U.S. DISTRICT COURT**

**DISTRICT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 03-00032 |
| Plaintiff, | SUPPLEMENTAL SENTENCING MEMORANDUM AND OBJECTION TO U.S. PROBATION'S PRESENTENCE INVESTIGATION REPORT; CERTIFICATE OF SERVICE |
| vs. | |
| THOMAS V.C. TANAKA, | |
| Defendant. | |

### I. INTRODUCTION

The problem with the U.S. Probation Office's Presentence Investigation Report is that the U.S. Probation Office is still under the impression the U.S. Sentencing Guidelines are controlling. <u>Booker-Fanfan</u>, made the Sentencing Guidelines merely advisory. <u>U.S. v. Booker-Fanfan</u>, 125 S.Ct. 738 (2005).

The U.S. Probation Office fails to consider all the relevant factors the District Court may consider in sentencing the Defendant. 18 U.S.C. §3553. As such, the Defendant respectfully requests the Court to exercise its inherent authority to impose a sentence sufficient but not greater than necessary.

//

//

## II. COOPERATION AND SUBSTANTIAL ASSISTANCE

The Defendant in this matter pled guilty to Misprision of a Felony on April 2, 2003. The Defendant has been on pretrial release for almost three years and as described in the U.S. Probation Office's Presentence Investigation Report, been compliant. The Defendant has not violated any of his release conditions. The Defendant asserts that his cooperation with the U.S. Government, involving government corruption cases, has been exemplary. The Presentence Investigation Report is not accurate and does not completely provide the Court with a true and accurate picture of the extensive of the Defendant's cooperation.

The Defendant's cooperation with law enforcement was not limited to strictly testifying against Mr. Gil Shinohara. The Defendant was contacted by federal law enforcement authorities in 1999, and provided the U.S. Government with voluminous documents pertaining to the submission of bids for bus shelters. Throughout his discussions with federal enforcement authorities, at no time did the Defendant refuse to cooperate and in fact, willingly discussed he bus shelter contract with federal authorities. Most importantly, during the trial of <u>United States v. Gil A. Shinohara</u>, U.S. District Court of Guam, Criminal Case No. 03-00047-001, the Defendant testified against Mr. Shinohara. Although there was no conviction on Mr. Shinohara's case, the Defendant testified knowing full-well the implications he faces at home, both politically, economically and personally, including the hardships he would face.

The Defendant was a minimal participant in the bus shelter bid-rigging. It is clear the Defendant's role was less culpable than the others. In this case, the Defendant had no knowledge of the extent of Mr. Shinohara's attempt to procure false

bids so that FEMA would not raise questions regarding the bus shelter award. Because Mr. Shinohara's was the primary actor, and the Defendant's role was minimal, if not zero, the Defendant qualifies under §3B1.2(A).

### III. UNDER SECTION 3B1.2(a), THE DEFENDANT QUALIFIES FOR A DEPARTURE/VARIANCES FOR HIS MINIMAL PARTICIPATION IN THE BID-RIGGING.

"Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." Commentary Section 4.

Here, the Defendant had no knowledge of the extent of Mr. Shinohara's attempt to procure false bids so that FEMA would not raise questions regarding the bus shelter award, until after the fact.

The Defendant's criminal history does not reflect that of a person from whom the public should not trust or the public should be protected from. The Defendant has no violent prior in his criminal history. And has had in fact no run-ins with the law.

### IV. DEFENDANT'S POSITION AS TO CALCULATION OF LOSS.

Although the base offense level is ten (10), the U.S. Probation Office increases the offense level by 12 on the false assumption the Government did not receive the benefit of bus shelters.

The Defendant objects to the additions and calculations contained in Paragraph 31 of the Presentence Investigation Report. The U.S. Probation Office relies on U.S.S.G. §2C1.7, which states:

> As directed by U.S.S.G. §2C1.7(b)(1)(A) if the loss to the government or the value of anything obtained or to be obtained

3
Case 1:03-cr-00032  Document 28  Filed 10/11/2005  Page 3 of 13

> by a public official or others acting with a public official, whichever is greater exceed $2,000, increase by the corresponding number of levels from the table in §2F1.1...

Because the project was awarded to Mr. Tanaka at an approximate price of One Million Nine Hundred Fifteen Thousand Two Hundred Dollars ($1,915.200.00), the Probation Officer then commences to add twelve offense levels to the base level of ten (10). US.S.G. §2F1.1(b)(1)(M).[1] Probation has acted on the assumption that a defendant would make a fraudulent statement or commit a fraudulent act and then benefit <u>himself</u> by taking all or part of the improperly acquired money or profit, without returning the money.

This case is different. There is in fact "no loss" to the government which is attributable to Mr. Tanaka. Mr. Tanaka submitted his offer in good faith and fully capable to fulfill the contract as offered. Mr. Tanaka complied with the contract and built bus shelters for the government. Upon FEMA's request that other bids be submitted, Mr. Gil Shinohara requested Mr. John Martinez submit a "bid" with a prior date. At that point, Mr. Tanaka had no knowledge a false bid was submitted.

//

//

---

[1] The United States Sentencing Guidelines §2F1.1 took effect on November 1, 1987. The sentencing commission in 2001 deleted the guideline and consolidated it with provisions into §2B1.1. In this case, the relevant dates in regards to Defendant's crime occurred in December 1997 and January 1998. Defendant Tanaka agrees that the United States Sentencing Guidelines §2F1.1 is the correct guideline in defendant's case.

The commission's discussion of loss is contained in Application Note number seven until November 1, 1998 when the commission re-designated that Application Note as application note eight. The commission initially used three measures of loss in (b)(1): estimated loss, probable loss and intended loss. The commission dropped the phrase "estimated, probable or intended loss" from (b)(1), effective June 15, 1998. The commission effective on November 1, 1991, made a number of changes to the guidelines and commentary concerning loss. First, neither the guideline nor the commentary referred to probably loss and only measures of loss were "intended loss" and "actual loss". The greater of the actual or intended loss is to be used. The commission also added additional factors to be considered in the common loss in certain situations: (1) misrepresentation of the value of an item or product substitution; (2) fraudulent loan application and contract-procurement case; (3) consequential damages in procurement-fraud and product-substitution cases; (4) the diversion of government programs benefits; and (5) Davis-Bacon Act cases. Thus, from November 1, 1991 procurement cases had to deal with either intended losses, or actual losses and also "consequential damages".

Tanaka's position is not without basis in the U.S.S.G. which states when loss does overstate or understates the seriousness of Defendant's conduct, that Defendant would be entitled to an appropriate departure.

2F.1.1 Commenting Note 7(b) states:

> . . . Where the loss determined above significantly understates or overstates the seriousness of the defendant's conduct, an upward or downward departure may be warranted.

2F1.1 Commenting Note 10 states:

> . . . In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense. This may occur, for example, where a defendant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it. In such cases, a downward departure may be warranted.

In <u>United States v. Redemann</u>, 295 F.Supp.2d 887 (E.D. Wisc. 2003) the court in bank fraud case where guidelines were 18-24 months, for loss of 2.5 million, court departed downward two levels in part because loss significantly overstates seriousness of offense. "Under application notes 8(b) and 11, the court may depart when the amount of loss determined under §2F1.1(b)(1) significantly overstates the seriousness of the defendant's offense. U.S.S.G. §2F1.1 cmt.n.8(b) & 11 (1998)." In <u>Redemann</u>, the defendant submitted false invoices for work supposedly done on the bank, but he did in fact do some valuable work for the bank which was not adequately recognized by the loss figure.

### A. ACTUAL LOSS

Actual loss has been interpreted to be the net loss. Net loss is calculated by subtracting from the total amount of the fraudulent scheme from the value of any goods or services which the victim may have received in return from the defendant or which the victim was able to recover or keep by her own endeavors.

In <u>U.S. v. Alborz</u>, 818 F.Supp. 1306, 1308 (N.D. Cal 1993), the Court held:

> Because the specific offense characteristics of the guidelines seek to capture the <u>actual loss</u> from the criminal activity, any specific offense characteristics which includes in the amount of loss the value added by defendant's legal activities in relation to the car overstates the seriousness of the loss, and thus, the crime. This is precisely the mistake made here by the preparer of the Presentence Report.

In this matter, the bus shelters were contracted for and fully and completely built. The shelters are in existence today and still benefiting the people of this jurisdiction.

### B. INTENDED LOSS

"Intended loss" was the total amount of the property intended to be fraudulently taken <u>by defendant</u>. It appears that intended loss is used when the crime is not completed or the government seeks to increase the defendant's punishment. It is clear that Defendant Tanaka did not fraudulently intend to take any monies or property. Further, as previously addressed, Defendant Tanaka never intended or sought to help or benefit from anyone. Thus, the intended loss would be zero.

In <u>U.S. v. Galliano</u>, 977 F.2d 1350 (9th Cir. 1992), the defendant used false names and social security numbers to obtain credit, money and services from lending institutions. The lending institutions were able to recover part of their losses. Giving the evidence presented, the District Court had found that the was Defendant under no intention of repaying the loans.

In calculating loss the Courts looked to the intent of the defendant to determine <u>subjectively</u> what they intended to do in regards to repayment. <u>U.S. v. Shaw</u>, 3 F.3d 311 (9th Cir. 1993). The Defendant did not receive any unjust benefits from his misprision. Mr. Tanaka did bid in good faith; without any knowledge of bid-rigging until after the fact. Thus, subjectively he did not intend to take anything from the victim and thus his intended loss in this matter should be zero.

//

## C. CONSEQUENTIAL LOSSES

Here, there is no consequential losses. Consequential losses are defined in U.S.S.G. 2F1.1 Application Note 7b(c). Consequential damages are damages that are reasonably foreseeable with the example the loss increase the government reasonably foresee costs in making substitute transactions and handling or disposing of the products delivered or retrofitting a product so that it can be used for its intended purpose, plus the government's reasonably foreseeing the cause for rectifying the actual or potential disruption to government operations caused by the products substitution. In this matter, the Defendant does not know of any defects, complaints or deficiencies in the bus shelters as they were built. Further, the Defendant does not know any need to work with the government to rebuild or replace any of the shelters.

## V. IN THE INTEREST OF JUSTICE

The bus shelter matter did go to trial in regards to *United States v. Gil A. Shinohara*, Criminal Case No. 03-00047-001. In that matter, the jury acquitted Mr. Shinohara of all the related criminal charges in regards to the bus shelters. Mr. Tanaka admitted he knew of the bid-rigging. It would be unjust that the Defendant have to shoulder a heavier sentence than of the parties who had a greater role in the alleged criminal act of bid-rigging.

Mr. Tanaka would like to point out that for several years he has been suffering from chronic anxiety. The Defendant's prolonged sentencing cooperation has caused him extreme mental anguish. Defendant Tanaka would like the Court to know that the exemplary cooperation put forth by him came at a high price of extreme mental suffering and asks the Court to consider that as punishment enough in this case.

## VI. DEFENDANT TANAKA GUIDELINE CALCULATION

Defendant Tanaka asserts that pursuant to U.S.S.G. §§2C1.7(a) and 2X4.1 that his <u>base offense level is 4</u> with a criminal history of category one. Moreover, based on the Defendant's minimal participation, if any, the Defendant argues that he is entitled to an adjusted offense level reduction pursuant to U.S.S.G. §3B1.2 seeking a reduction of 4 levels (at the minimum of 2-level reduction). There is no specific offense characteristic since there is no "loss" to the Government. If the Court grants the Defendant a maximum reduction for a minimal role participant then he will be at an offense level 0.[2] The Defendant acknowledges this is a case of first impression for the offense level to be at 0. Assuming *arguendo* the Defendant is entitled to a 4-level downward departure for his minimal participation, the Defendant is entitled to another 2-level downward departure for accepting responsibility. The Defendant has accepted responsibility for his action and is entitled to a two-level departure pursuant to U.S.S.G. §3E1.1(a). The Defendant's offense level should now be at –2 or 0.

Lastly, the Defendant asserts that he has earned and should benefit fully from any substantial assistance he provided. The U.S. Government is obligated to request a downward departure in exchange for his cooperation in the Shinohara case in which he has assisted the United States Government.

//

//

---

[2] Defendant realizes under §2X4.1 Commentary Note 2, adjustments for §3B1.2 (mitigating role) <u>normally</u> does not apply. However, in this case, the Defendant has had an <u>extremely</u> minimal role to the extent the Court should still apply §3B1.2 adjustment.

1. **Base Offense Level:** The sentence range of Misprision of a Felony (18 U.S.C. §4), is found under U.S.S.G. §2X4.1. The base offense is 9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19.

   The underlying offense is Conspiracy to Defraud the United States, as a violation of 18 U.S.C. §371. The guideline section for the substantive offense is covered under §2C1.7. Under §2C1.7(a), the base offense level is 10. Under U.S.S.G. §2X4.1, the base offense level is nine levels lower than the offense level for the underlying offense plus any applicable specific offense characteristics that were known, or reasonably should have been known by the defendant. In no event shall the level be less than 4, or more than 19. Therefore, the offense level is decreased to 4 (in no event shall the Offense Level be less than 4). <u>4</u>

2. **Specific Offense Characteristic:** Under U.S.S.G. §2C1.7(b)(A) if the "loss" to the Government or the value of anything obtained or to be obtained by a public official or other acting with a public official, whichever is greater, exceeded $2,000.00, increase by the corresponding number of levels from the table in §2F1.1. Here, there is no increase. The value of the contract for bus shelters was $1,915,200.00. However, the Government received the benefit of the bargain because the Government received bus shelters. Therefore,

| | |
|---|---:|
| the Government incurred no loss. | <u>0</u> |
| 3. **Victim-Related Adjustments:** None. | <u>0</u> |
| 4. **Adjustments for Role in the Offense:** Under U.S.S.G. §3B1.1, based on the Defendant's role in the offense, the offense level is decreased by 4 if the Defendant was a minimal participant in any criminal activity. The Defendant had no knowledge and no participation in the bid-rigging. The persons who were involved in the bid-rigging was Messrs. Gil Shinohara and John Martinez. | <u>-4</u> |
| 5. **Adjustment for Obstruction of Justice:** None. | <u>0</u> |
| 6. **Adjustment for Acceptance of Responsibility:** The defendant accepted responsibility for his offense and qualifies for a two level decrease of the offense level pursuant to U.S.S.G. §3E1.1(a). | <u>-2</u> |
| 7. **Total Offense Level:** Either –2 or 0. | <u>-2 or 0</u> |
| 8. **Chapter 4 Enhancements:** None. | <u>0</u> |

## CONCLUSION

Defendant Tanaka respectfully requests the Court to consider the factors raised in the above Objection to Presentence Investigation Report when deciding a fair and reasonable sentence pursuant to 18 U.S.C. §3553(a).

//

//

The Defendant in this case has cooperated with Federal Officials since 2000. The Defendant has earned and should benefit from his cooperation and respectfully request the Court grant the Defendant a sentence of probation.

Respectfully submitted this 10th day of October, 2005.

        **MAHER • YANZA • FLYNN • TIMBLIN, LLP**
        Attorneys for Defendant
        **THOMAS V.C. TANAKA**

By: _____
    LOUIE J. YANZA

# CERTIFICATE OF SERVICE

I, Louie J. Yanza, hereby certify that on or before October 11, 2005, I caused to be sent by personal service or by facsimile a copy of the annexed **Supplemental Sentencing Memorandum and Objection to U.S. Probation's Presentence Investigation Report; Certificate of Service**, to the following parties at their place of business:

> Mr. Joseph F. Wilson
> Assistant U.S. Attorney
> OFFICE OF THE UNITED STATES ATTORNEY
> Suite 500, Sirena Plaza
> 108 Hernan Cortez Avenue
> Hagatña, Guam 96910
> Counsel for the United States of America

> Ms. Maria Cruz
> U.S. Probation Officer
> U.S. PROBATION OFFICE
> 2nd Floor, U.S. Courthouse
> 529 West Soledad Avenue
> Hagatña, Guam 96910

Dated this 11th day of October, 2005.

> **MAHER • YANZA • FLYNN • TIMBLIN, LLP**
> Attorneys for Defendant
> **THOMAS V.C. TANAKA**
>
> By: _____
> LOUIE J. YANZA